THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 21-cv-229

RUSSELL DORVIT,

               Plaintiff,

    v.

EAST PENN MANUFACTURING
CO.,

               Defendant.

**DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO
EXCLUDE THE REPORTS AND
TESTIMONY OF PLAINTIFF'S
EXPERT WITNESS**

NOW COMES Defendant EAST PENN MANUFACTURING CO., ("**Defendant**" or "**East Penn**") by and through its undersigned counsel, pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, Rule 702 of the Federal Rules of Evidence, and Local Civil Rule 7.3, and hereby submits its Memorandum in Support of its Motion to Exclude Plaintiff's Expert Witness (the "**Motion**"). For the reasons stated herein, this Court should properly exclude the reports of Plaintiff's expert, Andrew W. Gondzur, and further preclude him from testifying – by affidavit or otherwise – in connection with any motion, or at any hearing or the trial of this matter, on the grounds that: (1) his supplemental opinions are untimely under the Federal Rules of Civil Procedure, and (2) that he offers no scientific, technical, or specialized knowledge to assist the trier of fact, and his opinions are not based on sufficient facts or data.

## BACKGROUND FACTS

This litigation arises from the Defendant's termination of the Plaintiff's

1

employment in May, 2019. The Defendant, East Penn, is a corporation engaged in the manufacture and distribution of commercial batteries. Beginning on March 4, 2015, the Plaintiff was employed by East Penn as a 'Route Driver - Van,' until his termination on May 31, 2019. (Doc. 1, ¶¶1-5).

In the Complaint, the Plaintiff asserts three (3) separate claims for relief, all sounding in wrongful termination. (Doc. 1). While the Plaintiff alleges that he engaged in several 'protected activities,' and that his termination by East Penn for insubordinate conduct was pretextual, only one such activity is at issue in the Motion.[1] Specifically, in his Second and Third Claims for Relief,[2] the Plaintiff asserts that he was wrongfully terminated for exercising his rights under the North Carolina Occupational Safety and Health Act by refusing to "unload and deliver batteries in an unsafe manner that risked serious bodily injury," and for reporting alleged workplace safety violations. (Doc. 1, ¶188, 196). East Penn vigorously disputes these allegations, and instead asserts that the Plaintiff was terminated for engaging in a host of activities that were plainly insubordinate, including lying to a customer about an injury and flatly refusing to perform his designated job duties. (Doc. 8).

The incident that ultimately led to the Plaintiff's termination occurred on May 22, 2019 and involved the delivery by the Plaintiff of an order of ten (10) batteries to one of East Penn's customers – Atlantic Coast Toyota Lift ("**ACTL**"). (Doc. 1, ¶124).

---

[1] The Plaintiff also alleges that he was terminated for (i) refusing to operate a commercial vehicle in excess of the hours allowed by federal law, (ii) for complaining about purported Wage and Hour Act violations by East Penn, and (iii) for being suspected of filing formal complaints to report safety or wage issues to regulatory bodies. (Doc. 1, pp. 21-24).

[2] N.C. Retaliatory Employment Discrimination Act and Common Law Wrongful Discharge in Violation of North Carolina Public Policy, respectively. (Doc. 1, p. 21-24).

2

The Plaintiff did not stock the batteries on designated shelf at the ACTL facility. (Doc 1, ¶142). When the Plaintiff's supervisors at East Penn learned from ACTL's representatives that the Plaintiff did not stock the batteries on the shelf when delivering to ACTL – and that he had not done so for some time, telling ACTL that he had an alleged "injury" – East Penn addressed the topic with the Plaintiff and instructed him to place the batteries on ACTL's shelving unit going forward. (Doc. 1, ¶144); (Dorvit, 120-121); (EPM 0000342-343). The Plaintiff responded to his supervisor by unequivocally refusing to do so. (Doc. 1, ¶147); (Dorvit, 120-121); (EPM 0000342-343) (Christie, 165). Specifically, the Plaintiff asserted that the location and positioning of the particular battery rack where East Penn's batteries were stored purportedly forced him to get on his "hands and knees" to load the batteries onto the shelf, and that he "was not paid enough" to do so. (Doc. 1, ¶147); (Dorvit, 121); (EPM 0000342-343).

After conducting an investigation of the ACTL shelving and finding no evidence of the existence of any unsafe condition, and upon learning that the Plaintiff had lied to ACTL's representatives about a purported injury[3], on May 31, 2019, East Penn terminated the Plaintiff for insubordination. (Doc 1, ¶153). The Plaintiff's delivery of batteries to the ACTL facility and refusal to stock the batteries delivered, and subsequent termination, are hereinafter referred to collectively as the or the "**ACTL Incident**."

---

[3] The Plaintiff testified that, at no time during his employment with East Penn did he suffer from any injury that prevented him from performing his designated job duties, as he had told ACTL representatives, nor had he reported any such alleged "injury" to East Penn, as required by East Penn's policies and procedures. (Dorvit, 130-31).

3

On November 15, 2021, the Plaintiff disclosed his retained expert, Andrew W. Gondzur, and served his expert report (the "**Gondzur Report**"). A copy of the Gondzur Report is attached hereto as **Exhibit A**. The Gondzur Report discloses a single opinion – that the "subject workplace [ACTL], and work therein, were unsafe and unreasonably dangerous, as designed…" (Gondzur Report p. 6) (Gondzur, 45-49). In forming this opinion, Gondzur admitted in deposition that he: i) never conducted any personal inspection, testing or analysis of the ACTL shelving or the batteries stored upon the same; and ii) relied exclusively upon the allegations and "assumptions" that were provided by the Plaintiff and, in essence, taken straight from the allegations of his Complaint. (Gondzur Report, pp. 4-5) (Gondzur, 38-42; 45-58). Among these "assumptions" are purported "facts" that have been shown through discovery to be false. For instance, Gondzur bases his singular opinion on the following assumptions, among others:

1) that the batteries to be stocked in connection with the ACTL Incident weighed up to 50 pounds;

2) that the shelves on which the batteries were to be stocked had a sloped-incline of 15-20 degrees;

3) that the Plaintiff was forced to load the shelving from front to back, and to hold the batteries from sliding forward against the weight of other older batteries;

4) that ACTL stored the batteries involved in the ACTL Incident on the bottom shelf of the rack, nearest the floor;

4

5) that the Plaintiff was, as a result, required to "get on his hands and knees and load batteries from the front of the rack, in a manner that the rack was not designed to be loaded. (Gondzur Report, pp. 4-6).

As discussed herein, each of the foregoing assumptions included in the Gondzur Report are demonstrably false – and yet were relied upon by Gondzur in forming his opinion. (Gondzur Report, pp. 4-6). As even Gondzur himself acknowledged in his deposition, the accuracy of the facts underlying assumptions made in conjunction with the formation of an opinion is critical. (Gondzur, 39-42)

East Penn noticed its deposition of Gondzur for March 1, 2022. Approximately twelve (12) minutes prior to the commencement of the deposition – and the day prior to the close of the extended discovery period on March 2, 2022 – the Plaintiff served an amended report of Gondzur (the "**Supplemental Report**"), over the objections of East Penn's counsel. A true and accurate copy of the email by which the Supplemental Report was served, and the Supplemental Report itself is attached hereto, collectively, as **Exhibit B**.

## **ARGUMENT**

The Supplemental Report of Gondzur is untimely under the Federal Rules of Civil Procedure and should be stricken from the record pursuant to Rules 26 and 37. Separately, irrespective of his untimely Supplemental Report, Gondzur should be entirely excluded as an expert witness under *Daubert* and Federal Rule of Evidence 702 because his opinion and testimony are irrelevant, unreliable and therefore fail to assist the fact finder. Furthermore, the bases for Gondzur's opinion are not

5

sufficiently tied to the facts of the case to provide meaningful – and admissible –

opinion testimony in this matter.

## I. The Supplemental Report Fails to Comply with Rule 26 and Should Be Excluded Under Rule 37(c)(1).

Rule 26(a)(2)(B) requires that each party must timely disclose the identity and

report of any witness who is retained to provide expert testimony. *See* FED. R. CIV. P.

26(a)(2)(A), (B). The Report must contain:

> (i)    A complete statement of all opinions the witness will express and the basis for them;
>
> (ii)    The data or other information considered by the witness in forming them;
>
> (iii)    Any exhibitions that will be used to summarize or support them;
>
> (iv)    The witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v)    A list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition;
>
> (vi)    A statement of the compensation to be paid for the study and testimony in the case.

Rule 26(e)(1) imposes upon parties a duty to supplement the information

contained in any such report served. *See* FED. R. CIV. P. 26(e)(1). A party that fails,

without substantial justification, to disclose information required by Rule 26(a) or

26(e)(1) is not permitted to use as evidence at trial any information not so disclosed.

*See* FED. R. CIV. P. 37(c)(1). "Excluding evidence as a sanction for non-disclosure, even

in the absence of bad faith, supports what the Fourth Circuit identified as the 'basic

purposes' of Rule 37(c)(1), which is to prevent surprise and prejudice to the opposing

party." *Contech Stormwater Solutions, Inc. v. Baysaver Techs. Inc.,* 534 F. Supp. 2d

616, 622 (D. Md. 2008) (*quoting Southern States Rack & Fixture, Inc. v. Sherwin-*

*Williams Co.,* 318 F.3d 592, 596 (4th Cir. 2003).

It is established in this Circuit that "[i]f a party fails to [timely] provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Gallagher v. Southern Source Packaging, LLC,* 568 F. Supp. 2d 624, 631 (E.D.N.C., 2008) (*citing* FED. R. CIV. P. 37(c)(1)). "The Court has broad discretion to determine whether an untimely disclosure is substantially justified or harmless." *Id.* "In determining whether to exclude untimely expert disclosures, courts are to consider five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Id.* (*citing S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.,* 318 F.3d 592, 597 (4th Cir. 2003).

Here, on June 23, 2021, counsel for the parties submitted their Amended Joint Rule 26(f) Report, which provided that "[r]eports required by Rule 26(a)(2)(B) and disclosures required by Rule 26(a)(2)(C) are due during the discovery period: from Plaintiff by November 1, 2021." (Doc. 11, p. 1). On November 2, 2021, the Court extended this period to November 15, 2021. (Doc. 16). The Plaintiff served the initial Gondzur Report on November 15, 2021. On February 1, 2022, the Court granted the parties' Joint Motion seeking to extend the discovery period for an additional thirty (30) days to March 2, 2022. (Doc. 20, p. 1). As stated above, Plaintiff served the

Supplemental Report twelve (12) minutes prior to the commencement of Gondzur's deposition, and less than one (1) day prior to the close of the extended discovery period – all without justification of any kind.

Importantly, the Supplemental Report includes the following additional basis for Gondzur's opinion that the "subject workplace [ACTL], and work therein, were unsafe and unreasonably dangerous, as designed…":

> 7. A review on 2/27/2022 of additional evidence East Penn's injury and illness logs finds more than one incidence of a WMSD (workplace musculoskeletal disorder) among the job title of driver. This should raise a red flag that employees may be exposed to uncontrolled, recognized hazards that should be investigated and mitigated.

The Supplemental Report – disclosed minutes prior to Gondzur's deposition – should be stricken as untimely because its submission was neither substantially justified nor harmless, within the meaning of FED. R. CIV. P. 37(c)(1). Upon information and belief, the "additional evidence" referred to in the paragraph 7 of the Supplemental Report and above, was produced to Plaintiff's counsel no later than January 21, 2022. Based on the statement in the Supplemental Report itself, Gondzur inexplicably failed to review the same until February 27, 2022 – more than a month after its production. No justification for the late disclosure of the Supplemental Report was even attempted by the Plaintiff at the time of its service – rather, it was simply served over East Penn's objection.

Further, this additional basis for Gondzur's opinion, while short in length, raises new substantive issues not previously addressed in the initial Gondzur Report regarding the extent to which East Penn should, purportedly, have been 'on notice'

8

that it was subjecting the Plaintiff – and perhaps other drivers – to allegedly unsafe working conditions. The initial Gondzur Report contained analysis limited only to the conditions allegedly present during the ACTL Incident, and did not address a broader range of potential injuries that East Penn's employees may have suffered on the job. The additional basis for Gondzur's opinion contained in the Supplemental Report, therefore, exceeds the scope of the prior report (i.e., the degree to which the stocking of batteries relating to the ACTL Incident could be done with reasonable safety), and suggests that East Penn's customers' facilities were sufficiently rife with workplace injuries such that there were "red flags" of rampant unsafe working conditions. (Supplemental Report, p. 7).

The eleventh-hour disclosure of the Supplemental Report also constitutes an unfair surprise to East Penn, as it has essentially no ability or opportunity to rebut or respond to the additional basis for Gondzur's opinion disclosed. Further, East Penn has essentially no way to "cure" the matter as the disclosure came at the end of the discovery period, and without sufficient notice for East Penn's counsel to meaningfully prepare to depose Gondzur on this expanded scope of his opinion. Further, the additional evidence, if allowed, has the potential to disrupt the trial and other proceedings in this matter as the Plaintiff's expert testimony relating to the ACTL Incident has been expanded beyond the particular circumstances at the ACTL facility to now impute a degree of purported "general awareness" or knowledge of allegedly inherently dangerous working conditions from entirely unrelated injuries. For all of these reasons, the Supplemental Report should properly be stricken and

Case 1:21-cv-00229-NCT-JEP   Document 24   Filed 04/01/22   Page 9 of 22

excluded from use in any motion, proceeding or at the trial of this matter.

## II. Gondzur's Testimony Should be Excluded Because He Offers No Scientific, Technical, or Specialized Knowledge that is Helpful to the Trier of Fact, and His Singular Opinion is not Based on Sufficient Facts.

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony. *See* FED. R. EVID. 702. The Rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case.

*See id.*

*Daubert* clarifies that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). "Expert witnesses have the potential to be both powerful and quite misleading." *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001). Courts have distilled Rule 702's requirements in two crucial inquiries: whether the proposed expert testimony is <u>relevant</u> and whether it is <u>reliable</u>. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999); *Daubert,* 509 U.S. at 589; *United States v. Forrest,* 429 F.3d 73, 80

10

(4th Cir. 2005). Additionally, it is the burden of the party propounding the expert testimony to establish its admissibility. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

First, to be relevant, the proposed expert testimony must be helpful to the trier of fact. *See Daubert,* 509 U.S. at 591—92. "[R]elevance – or what has been called 'fit' – is a precondition for the admissibility of expert testimony, in that the rules of evidence require expert opinions to assist the 'trier of fact to understand the evidence or determine a fact in issue.'" *United States v. Ancient Coin Collectors Guild,* 899 F.3d 295, 318 (4th Cir. 2018). **A key "aspect of relevancy . . . is whether expert testimony proffered in the case <u>is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute</u>**." *Daubert,* 509 U.S. at 591 (emphasis added). "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Aircraft Fueling Sys. v. Southwest Airlines Co.,* 2011 U.S. Dist. LEXIS 141175, *16 (N.D. Ok., Dec. 8, 2011). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id.* Importantly, expert testimony may be excluded as irrelevant where the bases for the opinions contained in the report are unsupported by evidence of record. *See AVX Corp. v. Corning Inc.,* 2019 U.S. Dist. LEXIS 164863, *78 (E.D.N.C., September 26, 2019) (excluding expert testimony as irrelevant where expert report was based upon assumption for which there was no

11

evidence of contained in the record).

Additionally, "[t]he test of reliability is flexible and the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quotation omitted); *see Kumho Tire*, 526 U.S. at 141–42. A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education. *See Kumho Tire,* 526 U.S. at 147. "In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved." *Westberrv v. Gislaved Gummi AB.* 178 F.3d 257, 261 (4th Cir. 1999). Accordingly, in analyzing reliability, courts consider factors such as: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. *See Cooper,* 259 F.3d at 199; *see Daubert,* 509 U.S. at 592–94. *Daubert's* gatekeeping requirement ensures "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152.

Here, the Gondzur Report does not address or analyze any issue that is actually in dispute in this litigation. As a result, it is entirely irrelevant to the subject matter of the present litigation – and thus inadmissible under *Daubert*. While the Gondzur Report opines only that the "subject workplace, and work therein, were unsafe and unreasonably dangerous, as designed. . ." (Gondzur Report, p. 6),[4] this opinion is based upon hypothetical tasks and labor conditions that the Plaintiff <u>did not actually engage in</u>, nor was the Plaintiff expected to have undertaken during the ACTL Incident that ultimately led to his termination. Notably, the Gondzur Report fails to analyze the specific batteries and the specific shelves that the Plaintiff refused to stock, leading to his termination, and instead relies on inaccurate "assumptions" regarding the weight of the batteries, and the height and slope of the shelves – all while failing entirely to perform any inspection, measurement or calculation of any kind upon the same. This misguided analysis of the purported facts of the case at hand is exemplified in the third stated basis for Gondzur's opinion set out in the Gondzur Report, which states as follows:

---

[4] In his deposition, Gondzur confirmed that this was the only opinion that he was asked to provide, and that he did provide, in connection with this case. (Gondzur, 45-49).

13

3. Loading a rack at floor level from the front with heavy batteries significantly increases the risk of musculoskeletal disorder due to a combining of risk factors, as described below:

    3.1. Forceful exertion of pulling out older batteries weighing from 30 to 50 pounds with shoulder extension while in an extremely awkward posture kneeling on a hard surface, coupled with twisting and contact stress both from kneeling on floor and leaning or resting on hard shelf and/or hard shelf edge.

    3.2. Forceful exertions of pushing a series of two or more batteries weighing from 30 to 50 pounds, up an approximate 15 to 20 degree slope, against the force of gravity, with shoulder extension while in an extremely awkward posture kneeling on a hard surface while experiencing contact pressure or contact stress from the floor, shelf and shelf edge.

**(**Gondzur Report, p. 6).

Here, Gondzur explicitly indicates that his ultimate opinion regarding the allegedly "unreasonably dangerous" working conditions present at the ACTL Facility is based solely on assumptions that the Plaintiff was engaged in pushing and pulling batteries, weighing up to 50 lbs., up a "15 to 20 degree slope, against the force of gravity" all while in the "extremely awkward posture kneeling on a hard surface." (Gondzur Report, p. 6). Further, the Gondzur Report assumes that the batteries were stored "on the bottom shelf of the rack, just above floor level" such that the Plaintiff had to load the batteries while on his hands and knees on the floor. (Gondzur Report, p. 4). However, the uncontested evidence produced during discovery indicates that circumstances described in the Gondzur Report do not reflect the actual tasks that the Plaintiff was expected to – and ultimately refused to – undertake in regard to the ACTL Incident that led to his termination for insubordinate conduct.

First, the Gondzur Report significantly over-estimates the weight of the actual batteries that the Plaintiff was expected to stock in connection with the ACTL Incident. On May 22, 2019, the Plaintiff delivered an order of ten (10) total batteries

14

to the ACTL Facility, consisting of: eight (8) Model 535MF, and two (2) Model 524MF. (Kines, 83; Dep. Ex. 15) (EPM 0003671-72). The Models 535MF and 524MF weigh approximately 37 lbs., (Christie, 136-37) (Response to Plaintiff's Interrogatory No. 11) – significantly less than 'up to 50 pounds' described in the Gondzur Report. (Gondzur Report, p. 6). While there were larger, heavier "Doosan" branded batteries that were kept on the lowest shelf of the same rack at the ACTL Facility, <u>the Plaintiff did not deliver those larger batteries during the ACTL Incident</u>. (Kines, 71, 83-84, 95; Dep. Ex. 42).

Further, the Model 535MF and Model 524MF batteries that were actually delivered by the Plaintiff in connection with the ACTL Incident were <u>never located on the bottom shelf of the rack at the ACTL Facility</u>, as was assumed in the Gondzur Report, but were instead located on the second shelf from the bottom. (Christie, 155-56; Dep. Ex. 42); (Kines, 88-89); (Williford, 31-33). The foregoing evidence is undisputed. The distinction is critical, as there is a roughly twenty-inch height difference between the front base of the two shelves; with the bottom shelf being approximately five (5) inches above ground level, and the second shelf being approximately twenty-five (25) inches above ground level. (*See* EPM 0003618-19). However, the Gondzur Report fails entirely to consider or analyze the specific task at issue during the ACTL Incident – the loading of smaller batteries onto the second shelf of the ACTL rack. And, even more, the Gondzur report fails to include any calculation, analysis or application of the scientific method whatsoever – with respect to the placement of batteries of any weight on either shelf. As a result, the Gondzur

15

Report is not only irrelevant in its consideration of facts not at issue in the present case, but it is also unreliable, as it fails provide any meaningful technical, scientific or specialized information that would assist the fact finder.

Further, the Gondzur Report also incorrectly assumes that the incline of the shelves was a "15 to 20 degree slope." (Gondzur Report, p. 6). In reality, all of the shelves on the rack at the ACTL Facility have an approximate five (5) degree incline – a 300% to 400% difference from Gondzur's assumption. A photograph of this measurement shows the following:



(Dep. Ex. 82). In deposition, Gondzur flatly admits that a reduction of "50 to 60 or so percent less [than the 15% to 20% slope assumed] would have an impact" on the conclusion he reached in his report. (Gondzur, 63-68).

Importantly, as was also determined at the site inspection – which Gondzur

elected not to attend – the slope of the shelves at issue is not actually steep enough for the batteries to slide downwards merely from the force of gravity, as was assumed in the Gondzur Report, which stated "*FOR REFERENCE SAKE, NOTE THAT ONE MANUFACTURER OF SIMILAR SHELVING sells Rousseau Shelving with Sloped Shelves that provides gravity flow storage. With an average slope of 15 degrees, sloped shelves are designed for rear loading applications (also known as a flow rack*)." (Gondzur Report, p. 4). Video footage of the rack at issue at the ACTL Facility reveals that the batteries of which the Plaintiff was expected to stock would not slide downward towards the bottom of the shelves merely from the force of gravity, but would instead stay in place after being repositioned by hand. (Gondzur Dep. 68-69; 83-88); (EPM 0003636 – Placeholder for video shown[5]).

Accordingly, the Gondzur Report is not relevant to any factual issue of the case at hand as it plainly does not analyze the actual task that the Plaintiff refused to perform, and which formed the basis for his termination. *See Daubert,* 509, U.S. at 591 ("A key 'aspect of relevancy . . . is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'"). *See also AVX Corp. v. Corning Inc.,* 2019 U.S. Dist. LEXIS 164863, *78 (E.D.N.C., September 26, 2019) (excluding expert testimony as irrelevant where expert report was based upon incorrect factual assumptions). While the Gondzur Report concludes that stocking 50-pound batteries at ground level on a shelf with a 15-20 degree incline is "unreasonably dangerous," the Gondzur Report did not

---

[5] A copy of this video will be provided to the Court on a flash drive.

analyze the actual task that the Plaintiff was expected to perform: (i.e., stocking 37 pound batteries on a shelf roughly two feet above ground level with a slope of only 5 degrees), and which was performed only approximately two (2) times per month. (Dep. Ex. 15).

In summary, the actual conditions and tasks that were purportedly "analyzed" in the Gondzur Report are not the same conditions or tasks that are at issue in this litigation. The Plaintiff's expert witness elected not to visit the ACTL site, consider the actual conditions involved in the ACTL Incident, or perform any quantitative analysis whatsoever to support his singular opinion advanced in this matter. These failures are fatal under *Daubert*, and – irrespective of the timing of the submission of Gondzur's Supplemental Report – his opinions should be stricken and disregarded, in their entirety.

## <u>CONCLUSION</u>

For the reasons stated herein, both the Gondzur Report and the Supplemental Report should be stricken by the Court, and Gondzur should be excluded from providing any evidence or testimony as an expert witness in this matter, all in accordance with the requirements of Rule 26 and the principles of *Daubert* and its progeny.

This the 1st day of April, 2022.

By:   /s/: Christopher C. Finan
Christopher C. Finan
N.C.S.B. No. 27820

18

ROBERSON HAWORTH & REESE, P.L.L.C.
300 North Main Street, Suite 300
P.O. Box 1550
High Point, NC  27261
Telephone:  (336) 889-8733
Facsimile:  (336) 885-1280
Email:   cfinan@rhrlaw.com

Gary D. Melchionni
STEVENS & LEE
51 South Duke Street
Lancaster, PA 17602
Telephone: (717) 291-1031
Facsimile: (610 236-4171
Email:   gdm@stevenslee.com

*Attorneys for Defendant East Penn*
 *Manufacturing Company, Inc.*

19

## INDEX OF EXHIBITS

**Exhibit A**           The Gondzur Report

**Exhibit B**           The Supplemental Report

**Exhibit C**           Excerpts from the Deposition of Russell Dorvit

**Exhibit D**           Excerpts from the Deposition of Zachary Christie

**Exhibit E**           Excerpts from the Deposition of Andrew Gondzur

**Exhibit F**           Excerpts from the Deposition of Christopher Kines

**Exhibit G**           Excerpts from the Deposition of Duncan Williford

**Exhibit H**           Deposition Exhibit 15

**Exhibit I**           Deposition Exhibit 42

**Exhibit J**           Deposition Exhibit 82

**Exhibit K**           Documents BATES numbered as EPM 0000342-343

**Exhibit L**           Documents BATES numbered as EPM 0003618-3619.

**Exhibit M**           Documents BATES numbered as EPM 0003671-3672

**Exhibit N**           EPM 0003636 – Placeholder for video shown

**Exhibit O**           Response to Plaintiff's Interrogatory No. 11

## CERTIFICATION OF WORD COUNT

The undersigned hereby certifies to the Court that the foregoing **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF PLAINTIFF'S EXPERT WITNESS** complies with L.R. 7.3(d)(1) in that it is less than 6,250 words in length, as calculated utilizing the word count feature of the undersigned's word processing program.

This the 1st day of April, 2022.

/s/: Christopher C. Finan
Christopher C. Finan
N.C.S.B. No. 27820
*Attorney for Defendant*

OF COUNSEL:

ROBERSON HAWORTH & REESE, P.L.L.C.
300 North Main Street, Suite 300
P.O. Box 1550
High Point, NC 27261
Telephone: (336) 889-8733
Facsimile: (336) 885-1280
Email: cfinan@rhrlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 21-cv-229

RUSSELL DORVIT,

        Plaintiff,

    v.

EAST PENN MANUFACTURING CO.,

        Defendant.

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that the foregoing **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF PLAINTIFF'S EXPERT WITNESS** has been filed electronically with the Clerk of the Court using the CM/ECF system and duly served by depositing a copy thereof in the United States Mail, first-class, postage prepaid, to the following:

| | |
|---|---|
| Eric Spengler, Esq. | Joshua R. Van Kampen, Esq. |
| SPENGLER & AGANS, PLLC | VAN KAMPEN LAW, P.C. |
| 352 N. Caswell Road | 315 E. Worthington Ave. |
| Charlotte, NC 28204 | Charlotte, NC 28203 |
| *Attorney for Plaintiff* | *Attorney for Plaintiff* |
| **Via Email:** | **Via Email:** |
| **eric@spengleraganslaw.com** | **josh@vankampenlaw.com** |

    This the 1st day of April, 2022.

                        /s/: Christopher C. Finan
                        Christopher C. Finan, N.C.S.B. No. 27820
                        *Attorney for Defendant*

OF COUNSEL:

ROBERSON HAWORTH & REESE, PLLC
300 N. Main Street, Suite 300
P. O. Box 1550
High Point, NC 27261
Telephone: 336-889-8733
Facsimile: 336-885-1280
Email: cfinan@rhrlaw.com

22